423 A.2d 427
**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Karl MOSLEY.**

Superior Court of Pennsylvania.

Argued June 10, 1980.

Decided Dec. 1, 1980.

Petition for Allowance of Appeal Denied March 16, 1981.

Ellen Mattleman, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

William T. Cannon, Philadelphia, for appellee.

Before BROSKY, WATKINS and CIRILLO, JJ.*

* Judge Vincent A. Cirillo of the Court of Common Pleas of Montgomery County, Pennsylvania, is sitting by designation.

30

WATKINS, Judge:

This is an appeal by the Commonwealth from the order of the Court of Common Pleas of Philadelphia County granting defendant–appellant's petition to withdraw his guilty plea. He had pled guilty on April 19, 1979, after a full and complete colloquy, to the crimes of rape, involuntary deviate sexual intercourse, possession of instruments of crime and robbery.

At the colloquy every possible question to protect the defendant's rights were asked and answered by the defendant under oath with his counsel standing beside him. The Commonwealth related in great detail what it intended to prove and he admitted that he performed the acts charged, and that it was his intention to plead guilty. It is difficult, after reading the longest colloquy I have ever read, and the opinions of the court below to find adequate reasons for permitting this plea to be withdrawn. It was made clearly, intelligently and voluntarily. After reading this colloquy where the defendant admitted the crimes charged, I am reminded of an incident related by counsel for a defendant entering a plea of guilty, who during the colloquy turned to his counsel and whispered: I don't think the judge wants me to plead guilty when I have already told him that I am guilty."

The evidence presented at the colloquy reveals in detail that on November 15, 1978 at approximately 6:00 P. M., Angeline Certaine who was twenty–five years of age at the time, was walking up 61st Street in Philadelphia. The defendant, Karl Mosley, came up behind her and placed a razor blade against the side of her neck. He led her to the rear of 5902 Jefferson Street and told her he would cut her throat if she made any noise. He took all the money she had, seventy cents. She was told to get on the ground and take off her pants, the defendant again telling her to stay quiet. He then raped her vaginally. Holding the razor against her throat he next thrust his penis into her rectum. During this occurrence a nickel fell out of her clothing and he said he should kill her for not giving him all her money.

Afterwards, he again raped her and then forced her to suck his penis. Then, before he fled, he again raped her orally and vaginally. All this was related in the colloquy and admitted by the defendant.

The plea was entered on April 19, 1979. On September 16, 1979, the petition to withdraw the plea was filed and after hearing was denied by the court below on November 13, 1979. A petition for reconsideration was filed and after hearing the court on January 3, 1980, granted the prayer of the petitioner to withdraw his guilty plea. This appeal by the Commonwealth followed.

In the court's first opinion it was stated: "Initially, we look to determine whether there exists a 'fair and just reason' to permit the withdrawal of defendant's guilty pleas. In resolving this threshold question, we must reject defendant's contentions of coercion by his then–counsel, Mr. Sosnov. Mr. Sosnov provided defendant with a frank assessment of defendant's situation and the possible alternatives, which he coupled with an expressed willingness and preparedness to proceed with the trial and defense of defendant. Defendant does not dispute this. Further, defendant's claim of inaction on the part of his then–defense counsel was disproved at the hearing on October 25, 1979. Thus we must reject such contentions.

"We must then discover whether there is an assertion of innocence. . . . In his formal petition defendant makes no assertion of innocence."

The court below then found that defendant's basis for withdrawal was not supported by the facts and that he did not present a "fair and just" reason for the withdrawal of his plea.

■■■ While a pre–sentence withdrawal request should be liberally considered, defendant must present a fair and just reason for withdrawing the plea. Even if a viable reason is asserted for withdrawal, withdrawal is only permitted if the Commonwealth has not been substantially prejudiced by reliance on the plea. *Commonwealth v. Hayes*, 462 Pa. 291,

300, 341 A.2d 85, 90 (1975); *Commonwealth v. Forbes*, 450 Pa. 185, 299 A.2d 268 (1973); *Commonwealth v. Hall*, 275 Pa.Super. 85, 418 A.2d 623 (1980); *Commonwealth v. Reider*, 255 Pa.Super. 163, 165, 386 A.2d 559 (1978); *Commonwealth v. Kamenca*, 226 Pa.Super. 548, 323 A.2d 162 (1974).

It should be pointed out that it wasn't until the defendant had the benefit of the first opinion in which the court pointed out that up to that time the defendant had not asserted his innocence that he finally made such an assertion in his petition for reconsideration. It took him from April 19, 1979 to January, 1980 to finally say he was not guilty. The court's rejection of his contention that he was coerced by counsel indicates that the court just didn't believe him. It is then difficult to find a reason to believe his claim of innocence. "Falsus in Uno, Falsus in Omnibus". The court below again rejected the coercion excuse in his reconsideration opinion.

"Although an accused possesses no absolute right to withdraw a guilty plea requests to do so which are made prior to sentencing are to be liberally allowed in view of the gravity of the plea and the numerous waivers of rights which attend it. (cases cited). Although the propriety of the withdrawal of a plea rests within the sound discretion of the trial court, (case cited) this discretion must be exercised with a view towards permitting withdrawal for any 'fair and just' reason unless the prosecution has suffered substantial prejudice. *Commonwealth v. Hayes*, 462 Pa. 291, 300, 341 A.2d 85, 90 (1975).

"Of those considered the critical one is the presence of lack of prejudice to the Commonwealth." *Commonwealth v. Boofer*, 248 Pa.Super. 431, 375 A.2d 173 (1977).

■ We find that the court below abused its discretion in permitting the withdrawal of the plea without "fair and just" reasons.

■ We also find that the court below abused its discretion in failing to consider the prejudice to the Commonwealth which was raised in both hearings.

As the Commonwealth contends:

"Even if it is assumed that defendant presented a 'reason' for allowing the plea withdrawal, the Commonwealth has been irremediably prejudiced in reliance on defendant's plea. At both the October 25, 1979,[9] and February 19, 1980 hearings on defendant's guilty plea withdrawal, the Commonwealth presented uncontroverted psychiatric testimony that Ms. Certaine may commit suicide under pressure of having to testify at any trial required by defendant's plea withdrawal. After defendant pleaded guilty on April 19, 1980, and it appeared the case was concluding, Dr. Wright testified that Ms. Certaine felt relieved and was returning to the way she was before her rape.

---

[9] At the October 25, 1979 hearing, the Commonwealth presented the stipulated testimony of Annette Nelson, a counselor at the Joseph J. Peters Institute. Ms. Nelson, who examined the victim on July 13, 1979, found Ms. Certaine to be acutely emotionally distressed and suicidal as a result of her rape and the possibility of having to testify at later court proceedings in the event defendant were permitted to withdraw his guilty plea.

"Upon learning of defendant's intent to withdraw the plea in mid–June, 1979, the victim became extremely depressed, a condition exacerbated by her epilepsy which causes her to relive the rape in vivid detail when forced to recount it. She began drinking excessively to repress memories of her savage assault and told Dr. Wright 'she didn't want to live'. Dr. Wright repeatedly asserted that Ms. Certaine has been preoccupied with the desire to die since defendant stated that he wished to withdraw his guilty plea.

Although Ms. Certaine was able to testify at defendant's preliminary hearing on November 29, 1978, and again at the suppression hearing on April 17–19, 1979, she told Dr. Wright that she did not think she could live through another court appearance. Based on his observations of the victim, and his belief that Ms. Certaine might kill herself if required to testify further, it was Dr. Wright's medical opinion that Ms. Certaine not testify at trial:

Q. Now, [defense counsel] asked you if Miss Certaine was asked just to testify one more time in this case,

would that have an effect on her. Your answer was, yes. Do your recall that question?

A. Yes.

Q. What type of effect, in your opinion, would that have on Miss Certaine?

A. It's unpredictable. I think she would be so disturbed that her behavior would be unpredictable. It would be likely self–damaging."

Q. What possible risks could there be in this behavior to her?

A. A risk to her life."

Despite this unchallenged psychiatric testimony presented by the Commonwealth, which Judge Marutani apparently accepted as entirely credible, he refused to rule on whether the prosecution was substantially prejudiced by the plea withdrawal, preferring to leave that decision to his Court. It is difficult to assess why the lower court was reluctant to deny defendant's request in light of the Commonwealth's massive evidence that acceptance of defendant's guilty plea withdrawal may likely result in the suicide of the victim.

"Rape is one of the most, if not the most, psychologically devastating crimes committed. Judge Marutani, in his desire to protect the defendant's interests, has unjustifiably ignored the victim. The justice system protects us all from violence. Defendants must not be permitted to recruit the justice system to further harm their victims. This case illustrates the actual harm that our courts can inflict on a victim of crime by application of a contrived and purely formal analysis of the 'rights' of the defendant unrelated to the ultimate interests and stakes at risk. The lower court has 'protected' a speculative interest of the defendant to the harm of the hapless victim whose protection is the first aim of criminal justice."

The prejudice to the prosecution in this case prevents the Commonwealth from calling this witness without the grave possibility of endangering her life and in effect puts the Commonwealth out of court.

Order permitting the withdrawal of the guilty plea is reversed and the defendant is ordered to appear before the court for sentencing on his guilty plea.